## McLain & Badgett *vs.* Coulter.

Where A. purchased land of B. and executed notes therefor, there being, at the time, judgments in the same county, which were a lien on the land, and the vendor promising to pay the judgments, if the vendor fails to do so, this gives the vendee no right to enjoin the payment of the notes to an innocent assignee, when the land is afterwards sold under the judgments.

Declarations or admissions are slight circumstances, and those of an assignor prove nothing against his assignee.

Though the vendor defrauded the vendee, yet, if the vendee, before and after the transfer of the notes, assured the assignee that they were good, and that he would pay them when they fell due, he can have no relief.

The agreement of the vendee, to permit the notes to be assigned, by which the assignee might suffer loss or prejudice, is a valid consideration, sufficient to protect them as innocent purchasers.

This was a suit in chancery, instituted by Coulter against McLain, Badgett, and Amos, in the Pulaski Circuit Court, and there determined, in November, 1841, before the Hon. John J. Clendenin, one of the circuit judges. The bill charged that Coulter purchased of Amos a certain tract of land, for which he executed two notes, for $450 each, payable at a future day, as the consideration money. At the same time, Amos covenanted to make a good and sufficient title, upon the payment of the last note. That, at the time of the purchase, Brookie and Johnson had a judgment outstanding against Amos, in the

county where the land was situated, and that DeBaun had, also, a judgment against him, in the same county; that these judgments were unsatisfied at the time of the purchase, and constituted a lien upon the land. The bill further alleged, that Coulter had no knowledge of these judgments, at the time of his purchase; that the purchase money agreed to be given was the full value of the land; that executions issued upon the judgments, and the land was sold for about the sum of $400, which was applied in the payment of the executions; that the notes that Coulter executed to Amos were afterwards transferred to McLain & Badgett for an illegal and void consideration; that, at the time the notes were executed, Amos expressly stipulated that he would not transfer them; that Coulter had never had possession of the land; that Amos, when he executed the contract, had no title to the land, nor had he since acquired any, and was insolvent, and that Coulter was under the undue influence of spirituous liquor, at the time, and was so illiterate that he could neither read nor write. The bill charged McLain & Badgett with confederating with Amos to defraud him, Coulter, and prayed that the notes executed to Amos, and transferred to McLain and Badgett, might be cancelled, and they perpetually enjoined from collecting them. An injunction was granted, agreeably to the prayer of the bill. Badgett & McLain answered separately. Badgett stated that he knew nothing of the purchase by Coulter from Amos of the land, or the consideration for which the notes were given. He admitted that he and McLain were partners, and that they held two notes against Coulter, as assignees of Amos, for about nine hundred dollars; that their agent, Jesse B. Badgett, purchased the notes of Amos for them, and without their knowledge, and that suit had been instituted upon one of the notes, at law; that they had no knowledge of the judgments stated in the bill, until after suit was brought upon the note; that Coulter informed their agent that the notes were good, before he purchased them, and he would pay them when they fell due; that they paid a good and valuable consideration of about seven hundred dollars for the notes, and that the amount, he believed, was paid by their Agent to Amos. They did not know whether Coulter was illiterate or otherwise, or whether under the excitement of ardent spirits or not; nor did they know whether or not he

had held the land in possession; that Coulter offered to execute a new note, which their agent declined receiving, as being unnecessary, and the answer denied all fraud. McLain answered, that he knew nothing of the allegations in the bill, but admitted the partnership between himself and Badgett, and the authority of their agent to purchase the notes, and his sanction of the contract, at the same time denying fraud. There was a general replication to the answers, and upon the final hearing, the Court made the injunction perpetual, and ordered the notes to be cancelled, from which decree McLain & Badgett appealed.

The evidence in the case it is not necessary to detail.

The case was argued here by *Fowler*, for the appellants, and *Ashley & Watkins, contra.*

*By the Court*, LACY, J. The allegations in the bill are not supported by proof, and the answers expressly negative them. The evidence shows that, at the time of the purchase, Coulter inquired of Amos as to the liens, and that Amos remarked that there were none but such as he would settle. The judgments were of record, and in the same county in which the land lay, of which Coulter had full knowledge, and trusted to Amos, as the proof shows, to take up the judgments; and, if he was deceived by Amos failing to do so, certainly that gives him no claim against McLain and Badgett, who were the innocent purchasers of the notes, for a valuable consideration, without any notice. Coulter's equity, whether real or supposed, was against Amos, and not McLain & Badgett. Even the evidence against Amos as to the alleged fraud in the sale, is slight and unsatisfactory. It consists principally in loose remarks, and conversations, had at different times, between the witness and Amos, after the purchase by Coulter. Declarations or admissions are slight circumstances, and they prove nothing against innocent assignees. It is not competent for an assignor, by admissions or declarations, to defeat the claim of his assignee.

The allegation that Badgett & McLain purchased the notes for a usurious or gaming consideration, is unsupported by the evidence.

All the witnesses show that a valuable consideration was given, although they differ somewhat as to the amount paid. Bank notes or promissory notes may be the subject of sale or purchase. Whether the contract on the part of Amos was fraudulent or not, as to Coulter, it is, unquestionably, binding upon him, when he recognizes McLain & Badgett's purchase of the notes to be valid, and his declaration to them, both before and after the transfer, that they were good, and he would pay them when they fell due.

It is not necessary, in order to sustain the contract, to prove that Coulter received a gain or benefit from McLain & Badgett. His agreeing, or permitting the assignment to be made to them, by which they might suffer loss or prejudice, constitutes a valid consideration, and is sufficient to protect them as innocent purchasers.

Decree reversed, and cause remanded.